**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Nicole M. Givhan, | : | Case No. 1:09CV2567 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits, Plaintiff's Reply Brief and Defendant's Sur-Reply (Docket Nos. 16, 17, 18 & 21). For the reasons that follow, the Commissioner's decision is affirmed.

I. **PROCEDURAL BACKGROUND.**

On September 20, 2006, Plaintiff filed an application for SSI alleging disability beginning on September 1, 2005 (Docket No 12, Exhibit 6, pp. 2-4 of 10). The request for SSI benefits was denied initially and upon reconsideration (Docket No. 12, Exhibit 5, pp. 2-4, 6-8, 12-14 of 25). Administrative Law Judge (ALJ) Mark M. Carissimi held an administrative hearing on December 1, 2008, at which Plaintiff, represented by counsel, and Vocational Expert (VE) Nancy Borgeson appeared and testified (Docket No. 12, Exhibit 2, p. 21 of 41). The ALJ rendered an unfavorable decision on March 4, 2009

(Docket No. 12, Exhibit 2, pp. 12-20 of 41). The Appeals Council denied Plaintiff's request for review on September 22, 2009 (Docket No. 12, Exhibit 2, pp. 2-4 of 41) Plaintiff filed a timely action seeking judicial review of the Commissioner's final decision.

## II. FACTUAL BACKGROUND.

### A. PLAINTIFF'S TESTIMONY.

Plaintiff had a general equivalence degree and some college credits (Docket No. 12, Exhibit 2, p. 36 of 41). She had been employed as a factory worker, customer service personnel and janitor. She was unable to work because she developed osteoarthritis in both knees and arthritis in her back. Additionally, Plaintiff suffered from insomnia and severe, uncontrolled hypertension (Docket No. 12, Exhibit 2, pp. 26 - 27 of 41).

Plaintiff took Oxycodone for her back pain and Ultram for the "ache" (Docket No. 12, Exhibit 2, p. 27 of 41). The side effect of these medications was sleepiness (Docket No. 12, Exhibit 2, p. 36 of 41). She could not work because of the fatigue induced state caused by her medication (Docket No. 12, Exhibit 2, p. 37 of 41).

Plaintiff opined that she could not walk long as her left knee would not bend and it was subject to swelling up to the size of a small soccer ball (Docket No. 12, Exhibit 2, pp. 28, 32 of 41). She was diagnosed with arthritis in both knees. To avoid swelling and/or pain, Plaintiff limited her use of stairs. Walking on concrete or marble exacerbated the swelling in her leg (Docket No. 12, pp. 29, 34, 35 of 41).

Plaintiff used carpal tunnel pads to minimize problems with her wrists. She was not persuaded that the pads were helpful (Docket No. 12, Exhibit 2, p. 30 of 41).

During a typical day, Plaintiff got her two minor children up between 7:30 and 8:30 a.m., helped them dress and sent them off to the bus (Docket No. 12, Exhibit 2, p. 28, 30, 31 of 41). Then she took

her high blood pressure medication, with food, and slept at least three hours. If her blood pressure was not controlled, Plaintiff took more medication and slept some more (Docket No. 12, Exhibit 2, p. 28, 31 of 41). Although Plaintiff vacuumed from a seated position because the vacuum was too hard to push and pull, she was able to cook meals for her minor children (Docket No. 12, Exhibit 2, pp. 32, 33 of 41). She seldom left her home because she was afraid of falling. When she did leave her home, it was typically with one of her adult children (Docket No. 12, Exhibit 2, p. 34 of 41). Plaintiff did not own a car but occasionally drove a vehicle borrowed from one of her children. Plaintiff seldom socialized (Docket No. 12, Exhibit 2, p. 35 of 41).

**B.     VE TESTIMONY.**

Dr. Nancy Borgeson, the VE, explained that Plaintiff's work experience was not long enough to qualify as past relevant work. The first hypothetical included a claimant, 39 years of age, who had a GED and no past work experience, and who was limited to (1) lifting and carrying up to twenty pounds occasionally and ten pounds frequently, (2) standing and walking for at least six hours out of an eight-hour day, (3) sitting for at least six hours out of an eight-hour day, (4) pushing and pulling up to twenty pounds occasionally, (5) pushing or pulling ten pounds frequently, (6) never climbing ladders, ropes, scaffolds or working at unprotected heights and (7) occasionally balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. The VE suggested that the hypothetical claimant could perform light unskilled jobs, such as a cashier II (clerical), a mail clerk and visual inspector.

The job of cashier, classified as light under the Dictionary of Occupational Title (DOT) required specific vocational preparation of anything beyond a short demonstration up to and including one month. There were approximately 14,000 such jobs in Northeast Ohio, 70,000 in the State of Ohio and 1.6 million nationally. The position of mail clerk, not in the post office, was considered unskilled labor,

requiring specific vocational preparation of anything beyond a short demonstration up to and including one month. There were approximately 1,450 such jobs in Northeast Ohio, 7,200 in the State of Ohio and 167,000 nationally. The visual inspector position was also light work with a specific vocational preparation of anything beyond a short demonstration up to and including one month. There were approximately 3,700 such jobs in Northeast Ohio, approximately 17,000 in the state and more than 300,000 nationally (Docket No. 12, Exhibit 2, p. 39 of 41).

In the second hypothetical, the ALJ asked the VE to consider the same worker but because of pain and fatigue, he or she would be off task 20% of the time or one day per week. The VE responded that this person could not perform the assigned duties. The VE opined that this person would have trouble sustaining employment full-time (Docket No. 12, Exhibit 2, pp. 39-40 of 41).

### III. SUMMARY OF MEDICAL EVIDENCE.

The three views of Plaintiff's left knee taken on September 26, 2004, showed no x-ray evidence of acute fracture of dislocation (Docket No. 12, Exhibit 8, p. 32 of 32). Plaintiff was diagnosed with a disease of the lymph nodes on June 24, 2005. The disease was treated with an antibiotic and pain reliever (Docket No. 12, Exhibit 8, p. 30 of 32).

Plaintiff underwent a vascular ultrasound on August 16, 2005. No evidence of a deep venous thrombus surfaced in the evaluated veins in the right lower extremity (Docket No. 12, Exhibit 8 p. 29 of 32). On August 18, 2005, the X-rays of Plaintiff's left foot showed no evidence of acute fracture or dislocation. There was a small amount of soft tissue swelling along the medial malleolus (Docket No. 12, Exhibit 8, p. 27, 28 of 32).

Plaintiff was treated for left knee and left elbow swelling on September 21, 2005, attributable to osteoarthritis/bursitis (Docket No. 12. Exhibit 8, pp. 18, 23 of 32). Multiple x-rays of the left elbow

did not reveal evidence of acute fracture, dislocation or osseous, articular or soft tissue abnormality (Docket No. 12, Exhibit 8, p. 25 of 32). The x-ray of the left knee showed no fracture, dislocation or osseous articular or soft tissue abnormality (Docket No. 12, Exhibit 8, p. 26 of 32).

On November 29, 2005, Dr. Rohit Chandurkar administered a computed tomography (CT) scan with contrast of Plaintiff's abdomen to determine the presence of diverticulitis or bowel obstruction. The presence of neither was excluded as a result of the test. The results suggested the presence of simple liver cysts and nodules were detected within the right lung base (Docket No. 12, Exhibit 8, p. 17 of 32). On March 13, 2006, Plaintiff twisted her knee. An increased blood pressure was a side effect of the pain treatment. She was released from the hospital on March 14, 2006, with a left knee immobilizer and a prescription for a pain reliever (Docket No. 12, Exhibit 8, pp. 6-15 of 32).

On November 21, 2006, Dr. Eulogio R. Sioson, M. D., conducted a one-time evaluation of Plaintiff and afterwards diagnosed Plaintiff with hypertension with no covert congestive heart failure, history of arthritis, depression and obesity. On November 27, 2006, the views from the x-ray study of Plaintiff's thoracic spine showed no signs of wedge fracture, pressure deformity or significant spurring (Docket No. 12, Exhibit 10, p. 3 of 15). Dr. Sioson further opined that Plaintiff had a normal range of motion in her cervical spine, elbows, wrists, hands-fingers and ankles. Plaintiff had a less than normal range of motion in her shoulders, hips, knees and dorsolumbar spine (Docket No. 12, Exhibit 10, pp. 5-7 of 15).

On December 4, 2006, Plaintiff complained of right arm and wrist soreness. She was diagnosed with a sprained wrist and shoulder pain for which Motrin was prescribed to relieve the swelling and pain (Docket No. 12, Exhibit 9, pp. 9, 13 of 36, 14 of 36). No acute fracture or dislocation was cited in the right elbow, humerus or shoulder (Docket No. 12, Exhibit 9, pp. 19, 20, 21 of 36).

On December 8, 2006, Dr. Jeffrey Vasiloff, M. D., opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour work day with a medically required hand-held device designed to effectuate ambulation, sit about six hours in an eight-hour workday and engage in unlimited pushing and pulling (Docket No. 12, Exhibit 9, p. 30 of 36). Plaintiff could occasionally climb using a ramp or stairs but never using a ladder/rope/scaffold; and occasionally balance, stoop, kneel, crouch and crawl (Docket No. 12, Exhibit 9, p. 31 of 36). Plaintiff was limited in her ability to reach in all directions (Docket No. 12, Exhibit 9, p. 32 of 36). Exposure to hazards was contraindicated (Docket No. 12, Exhibit 9, p. 33 of 36).

On April 24, 2007, Dr. Patricia Moore, M. D., certified that Plaintiff had three chronic medical conditions: hypertension, osteoarthritis and gastroesophageal reflux disease (Docket No. 12, Exhibit 9, p. 23 of 36). She opined that Plaintiff could not stand/walk for any amount of time during the eight-hour workday, that Plaintiff could sit for one half hour without interruption during the eight-hour workday, that Plaintiff could lift/carry up to five pounds frequently, that Plaintiff could lift/carry up to five pounds occasionally, and that Plaintiff was markedly limited in the functions of pushing/pulling, bending, reaching and engaging in repetitive foot movements. Dr. Moore opined that Plaintiff's functional limitations were expected to last more than one year and that Plaintiff was unemployable (Docket No. 12, Exhibit 9, p. 26 of 36).

### IV. STANDARD OF DISABILITY.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); See also 20 C.F.R. § 416.920)). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months." *Id*. (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively. To assist clarity, the remainder of this decision refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time her or she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she or he suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id*.

Fourth, if the plaintiff's impairment does not prevent his or her from doing his or her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent him or her from doing his or her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id*. (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (internal citations omitted) (second alteration in original)). If the Commissioner makes a

dispositive finding at any point in the five-step process, the review terminates. *Id*. (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## V. ALJ DETERMINATIONS.

After consideration of the entire record, the ALJ made the following findings of facts:

1. Plaintiff had not engaged in substantial gainful activity since September 20, 2006.

2. Plaintiff had the following severe impairments: obesity, hypertension and small heel spur on the left foot and osteoarthritis in the left knee. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C. F. R Part 404, Subpart P, Appendix 1.

3. Plaintiff had the residual functional capacity to perform a range of light work. Plaintiff could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently. Plaintiff could stand and walk for six hours and sit for six hours out of an eight-hour workday. She could occasionally climb ramps and stairs and balance, stoop, kneel, crouch and crawl. She could not climb ladders, ropes, scaffolds or work at unprotected heights.

4. Considering Plaintiff's age, education, work experience and residual functional capacity, Plaintiff was capable of working as a cashier (clerical), a mail clerk (not in the post office) and a visual inspector.

5. Plaintiff had not been under a disability as defined in the Act since September 20, 2006, the date the application was filed.

(Docket No. 12, Exhibit 2, pp. 12-20 of 41).

## VI. STANDARD OF REVIEW

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006). The district court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *McClanahan, supra*, 474 F.3d 830 at 833 (*citing Branham v. Gardner,* 383 F.2d 614, 626-627 (6th Cir. 1967)). In fact the Commissioner's findings as to any fact shall be conclusive if

supported by substantial evidence. *Id.* (*citing* 42 U.S.C. § 405(g )). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*citing Besaw v. Secretary of Health and Human Services,* 966 F.2d 1028, 1030 (6th Cir. 1992)).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)). Therefore the reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

### VII. ANALYSIS

There are four claims for which Plaintiff seeks judicial review. First, this case should be remanded for the ALJ to consider the new evidence filed in the federal district court. Second, the ALJ deprived Plaintiff of a full and fair hearing. Third, the ALJ failed to articulate a valid basis for rejecting the treating source opinions. Fourth, the ALJ failed to meet the burden at step five of the sequential evaluation because of a lack of substantial evidence.

Defendant contends that there is nothing in the record to corroborate Plaintiff's claims that she underwent treatment with Dr. Moore, an apparent treatment source. Alternately, Defendant argues that Plaintiff's current attorney had eleven months to obtain the medical records. Plaintiff cannot shift her burden of proof or production when she has had every opportunity to present evidence to the ALJ or

Appeals Council.

**1.**  **SHOULD THIS CASE BE REMANDED FOR CONSIDERATION OF THE NEW EVIDENCE?**

Plaintiff argues that she should be afforded a remand to the Commissioner for consideration of new evidence that was submitted to the Court.  This new evidence consists of medical records documenting the care that Dr. Moore provided from January 17, 2007 through December 8, 2008 (Docket No. 18, Exhibit 3).  Plaintiff contends that through no fault of her own, she had difficulty obtaining the records prior to the conclusion of the administrative proceedings.  The Commissioner should render a new decision that includes the entire record.

A remand under 42 U.S.C. § 405(g) "sentence six" for consideration of additional evidence is warranted only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.  *Ferguson v. Commissioner of Social Sec*. 628 F.3d 269, 276 (6th Cir. 2010) (*citing Foster v. Halter*, 279 F. 3d 348, 357 (6th Cir. 2001).  For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Id.*  Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Id.*  A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Id.*  The claimant has the burden of showing that a remand is appropriate.  *Id.* (*citing Foster*, 279 F. 3d at 357) (citations omitted); *see also Hollon v. Commissioner of Social Security,* 447 F.3d 477, 483 (6th Cir. 2006).

The Magistrate presumes that Dr. Moore's records memorializing medical care delivered prior to the hearing are new evidence and that counsel's representation that Dr. Moore's records were difficult

to obtain prior to the conclusion of the administrative process is true. Plaintiff's claim fails, however, as she has not demonstrated that the new evidence is material to her request for disability benefits.

The new evidence shows that in January 2007, Plaintiff underwent an X-ray of the chest. The results showed no evidence of acute cardiopulmonary process (Docket No. 18, Exhibit 3, p. 17 of 17). In February 2007, Plaintiff presented to Dr. Moore with complaints of chronic pain in the knee (Docket No. 18, Exhibit 2, p. 15 of 17). Dr. Moore ordered radiographic scans of the lumbar spin and in September 2008, the results showed mild degenerative facet changes at LS/S1 and L3/4; mild bilateral facet changes at L4/5; and no significant central canal stenosis at L2/3, L1/2 and T12/L1. Dr. Moore concluded that there was mild lumbar spondylosis (Docket No. 18, Exhibit 3, p. 12 of 17). Dr. Moore monitored Plaintiff's consumption of narcotic pain relievers through November 2008. In November 2008, Dr. Moore referred Plaintiff for counseling to address what appeared to be a potential addiction to prescribed narcotics (Docket No. 18, Exhibit 3, pp. 3-11 of 17 and 13-14 of 17). In October and November 2008, Plaintiff presented to Dr. Moore for refills on her narcotic medications. In a document dated December 9, 2008, Dr. Moore suggested that Plaintiff's chronic pain may be amenable to surgery (Docket No. 18, Exhibit 3, p. 1 of 17).

Remand for consideration of this new evidence is a futile act. Dr. Moore's notes show that Plaintiff was monitored monthly for the chronic use of prescribed narcotics. Although this new evidence arises during the period of disability, it does not speak to the severity or disabling nature of Plaintiff's impairments. This new evidence does not cure a deficiency or indicate a gradual worsening of Plaintiff's condition during the relevant time. The diagnostic tests administered during Dr. Moore's care do not explain the source of Plaintiff's chest or back pain. Had this evidence been presented to the Commissioner, there is a reasonable probability that the disposition of the case would have been the

same. The Magistrate denies the request for remand to the Commissioner for consideration.

2.     **A FULL AND FAIR HEARING**.

Alternately, Plaintiff contends that counsel retained shortly before the hearing requested leave to submit records from medical treatment incurred during 2007 at the Department of Jobs and Family Services. Plaintiff argues that the absence of two years of treatment history was highly prejudicial to consideration given Plaintiff's claim. Plaintiff contends that the ALJ's failure to leave the record open or obtain the records constitutes a breach of the ALJ's duty to develop the facts fully and fairly.

In the Sixth Circuit, it is well established that the plaintiff, not the ALJ, has the burden to produce evidence in support of a disability claim. *Marion v. Astrue,* 2010 WL 4955714, *4 (N. D. Ohio 2010) (*See, e.g., Wilson v. Commissioner of Social Security,* 280 Fed. Appx. 456, 459 (6th Cir. 2008) (*citing* 20 C.F.R. § 404.15129(a); *See also Struthers v. Commissioner of Social Security,* 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Secretary of Health & Human Services,* 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Commissioner of Social Security,* 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefit). There is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Id.*

(*citing Wilson, supra*, 280 Fed. Appx. at 459 ( *citing Lashley v. Secretary of Health & Human Services,* 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

The special duty requirement is not applicable here because Plaintiff was represented by counsel. Therefore, the ultimate burden of proving disability remained with Plaintiff. Plaintiff failed at every level of the administrative process to submit the evidence. The ALJ granted Plaintiff leave to submit the evidence within two weeks after the administrative hearing. Neither Plaintiff nor counsel presented the medical records to the ALJ or requested additional time to submit the records. No additional evidence was submitted to the Appeals Council. The evidence was submitted for the first time while disposition of the request for judicial review was pending. Plaintiff was not denied a full and fair hearing as the ALJ probed all of the relevant facts presented by Plaintiff.

**3.    TREATING SOURCE OPINIONS.**

Plaintiff contends that even in the absence of the new evidence, the ALJ erred in failing to attribute significant weight to the opinions of Dr. Moore that were already in the record. Alternately, the ALJ erred by failing to explain fully why this medical source opinion was rejected.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. *McCombs v. Commissioner of Social Security,* 2010 WL 3860574, *6 (S. D. Ohio) (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of the claimant's impairment(s), including symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Id.* (*citing* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. *Id.* (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)).

13

To qualify as a treating source, the acceptable medical source must have examined the claimant and engaged in an ongoing treatment relationship with the claimant consistent with accepted medical practices. *Id.* (*citing Smith v. Commissioner of Social Security,* 482 F.3d 873, 875 (6th Cir. 2007) (*quoting* 20 C.F.R. § 404.1502)). The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances. *Cross v. Commissioner of Social Security*, 373 F. Supp.2d 724, 729 -730 (N. D. Ohio 2005). Generally, more weight is attributed to treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight. *Id.* (*citing* 20 C. F. R. § 404. 1527(d)(2)).

Considering the two to three years of treatment provided by Dr. Moore, the ALJ considered her a treating source. However, the ALJ attributed less weight to her opinions on Plaintiff's functional limitations as there were no treatment notes or other diagnostic reports to support them (Docket No. 12, Exhibit 2, pp. 14, 17 of 41). Since the ALJ employed the proper legal standard to reach the conclusion and the conclusion is based on substantial evidence, the Magistrate affirms the ALJ's findings..

4. **RESIDUAL FUNCTIONAL CAPACITY.**

Plaintiff contends that the ALJ failed to properly consider the opinions of a treating physician. The Magistrate has already determined that the ALJ properly considered Dr. Moore's opinions.

14

Therefore the failure to consider the Dr. Moore's opinions in assessing residual functional capacity cannot be considered a basis for failing to meet the burden of proof at step five of the sequential evaluation.

Plaintiff also contends that the ALJ failed to properly consider the opinion of the consulting physician. With respect to the consideration given the consulting physicians, the rules are set forth in 20 C. F. R. §§ 404.1527(f) and 416.927(f). The ALJ is required to consider the consultant's findings of fact about the nature and severity of an individual's impairments as opinions of non-examining physicians and psychologists. TITLE II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT, SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996).

In the instant case, the ALJ did not ignore the opinion of the consulting source, Dr. Sioson. He considered Dr. Sioson's opinions and findings of fact about the nature and severity of Plaintiff's impairments as required by the regulations (Docket No. 12, Exhibit 2, p. 14 of 41). The ALJ complied with the procedural rules. Accordingly, his consideration of Dr. Sioson's opinions in assessing residual functional capacity was proper.

Plaintiff finally contends that the Commissioner failed to meet the burden of proof at step five of the sequential evaluation. Additionally, the ALJ did not have substantial evidence that Plaintiff was capable of functioning on a sustained basis in the workplace and therefore the Commissioner did not meet the burden of proof.

SSR 96-8p emphasizes that the residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. *Scott v. Astrue,* 2011 WL 711459, *6 (N. D. Ohio 2011) (*citing* TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, SSR 96-8p, 1996 WL 374184 (July

2, 1996)). A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. *Id.* The residual functional capacity assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. *Id.* Under the plain language of SSR 96-8p, the ALJ must consider whether a claimant can sustain a regular or equivalent work schedule.

Throughout the ALJ's decision, several references are made to Plaintiff's ability to sustain a regular schedule as defined in the regulations. Initially, the ALJ acknowledged that consideration was given to whether Plaintiff had the ability to do physical and mental work activities on a sustained basis despite her impairments. Then the ALJ determined that Plaintiff had an ability short of the regular and sustained work scheduled defined in SSR 96-8p. Finally, the ALJ determined that Plaintiff could sustain an equivalent work day that consisted of walking and/or standing six of eight hours and/or sitting six of eight hours each day (Docket No. 12, Exhibit 2, pp. 15-16 of 41). Although succinct, the ALJ engaged in a discussion of whether Plaintiff had the ability to sustain work related physical activities on a regular basis.

## VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED**.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: March 18, 2011